UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMERICAN CENTURY PROPRIETARY, HOLDINGS, INC., a Delaware corporation,<br><br>Plaintiff,<br>vs.<br><br>AMERICAN CENTURY CASUALTY COMPANY, a Texas corporation, and AMERICAN CENTURY CLAIMS SERVICE, INC., a Texas corporation,<br><br>Defendants. | Case No. |

## COMPLAINT

Plaintiff, American Century Proprietary Holdings, Inc., alleges as follows:

### THE PARTIES

1. Plaintiff, American Century Proprietary Holdings, Inc. (hereinafter "Plaintiff"), is a Delaware corporation with its principal place of business in Kansas City, Missouri. Plaintiff is the owner by assignment of the United States trademark registrations which are at issue in this action.

2. American Century is informed and believes and thereupon alleges that Defendant American Century Casualty Company (hereinafter "ACCC") is a Texas corporation with its principal place of business in Houston, Texas.

3. American Century is informed and believes and thereupon alleges that Defendant American Century Claims Service, Inc. (hereinafter "ACCS") is a Texas corporation with its principal place of business in Houston, Texas. On information and belief, ACCS is a subsidiary of ACCC. (ACCC and ACCS are hereinafter collectively referred to as the "Defendants").

1

## JURISDICTION AND VENUE

4. The First Claim of Relief herein arises under the laws of the United States, specifically the Lanham Act, 15 U.S.C. § 1114 prohibiting infringement of federally registered trademarks. The Second Claim of Relief arises under the Lanham Act, 15 U.S.C. § 1125(a) prohibiting false designation of origin and unfair competition. The Third Claim of Relief arises under the Lanham Act, 15 U.S.C. § 1125(c) prohibiting dilution of famous marks. The Fourth Claim of Relief arises under Texas' Anti-Dilution Statute, Tex. Bus. & Com. Code § 16.29, prohibiting dilution of marks. The Fifth Claim of Relief arises under the common law of the State of Texas prohibiting unfair competition.

5. This court has subject matter jurisdiction over the claims arising under the Lanham Act based on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and § 1338(a) because they arise under federal law. This Court has subject matter jurisdiction over all the claims based on 28 U.S.C. § 1332 because the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. This court also has supplemental jurisdiction over the state-law claims based on 28 U.S.C. § 1367, because they are so related to the claims arising under the Lanham Act that they form part of the same case and controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Defendants have their principal place of business in this District. Further, it is believed that Defendants have advertised, offered, and sold their services under the infringing marks in this District, and have thereby committed the acts complained of in this Complaint in this District.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement in violation of the Lanham Act, 15 U.S.C. Section 1114**

A.  Plaintiff's Business and Marks

7.  Plaintiff, American Century Propriety Holdings, Inc., is headquartered in Kansas City, Missouri. Through its predecessor-in-interest, American Century Services Corporation, Plaintiff applied to register the "AMERICAN CENTURY" mark with the United States Trademark Office on September 5, 1995. The application was filed on an intent-to-use basis and covered mutual fund brokerage, mutual fund distribution, and mutual fund investment services. The application was allowed, and the registration for "AMERICAN CENTURY," Registration No. 2,084,652, issued on the Principal Register on July 29, 1997. Therefore, Plaintiff's constructive first use date for the "AMERICAN CENTURY" mark is September 5, 1995. This registration has become incontestable under the Trademark Act, and thus serves as conclusive evidence of Plaintiff's exclusive right to use the mark "AMERICAN CENTURY" in connection with the services identified in the registration. (Details of Plaintiff's registrations referred to in this Complaint are attached hereto as Exhibit 1.)

8.  Plaintiff, through its predecessor-in-interest, began using the service mark "AMERICAN CENTURY" at least as early as December 5, 1996, in connection with a financial newsletter. On January 1, 1997, Plaintiff's predecessor-in-interest began offering a wide variety of financial services under the mark "AMERICAN CENTURY," such as mutual fund services, investment advisory and management services, retirement plan administration and consulting services, and educational services relating to investment-related topics.

9.  Today, Plaintiff's affiliated companies provide a wide variety of financial services and investment options to individual investors, institutional investors, and investment professionals under the mark "AMERICAN CENTURY." In addition to financial and investment services,

Plaintiff's affiliated companies offer printed newsletters, informational and educational materials, investment tools and calculators, and investment-related educational services to its clients, all under the "AMERICAN CENTURY" mark.

10.   In addition to Reg. No. 2,084,652 for "AMERICAN CENTURY," Plaintiff's predecessor-in-interest applied for and obtained registrations for four other marks containing "AMERICAN CENTURY," including the following:

| Reg. No | Mark | Reg. Date | Goods |
|---|---|---|---|
| Reg. No. 2,323,585 | AMERICAN CENTURY & Tree Design | February 29, 2000 | Class 36: mutual fund brokerage, mutual fund distribution, and mutual fund investment services |
| Reg. No. 2,412,401 | AMERICAN CENTURY BROKERAGE TELESELECT | December 12, 2000 | Class 36: securities brokerage services |
| Reg. No. 2,461,058 | AMERICAN CENTURY PRIORITY INVESTOR | June 19, 2001 | Class 16: newsletters in the field of mutual fund brokerage, mutual fund distribution, and mutual fund investment services |
| Reg. No. 2,943,710 | AMERICAN CENTURY | April 26, 2005 | See services in box below. |

Class 16: newsletters in the fields of finance and investments; printed informational and educational materials in the areas of investing, investments, financial strategies and planning, asset management, educational savings, retirement planning, and tax issues, namely, brochures, information sheets, and booklets;
Class 36: Financial services, namely, mutual fund brokerage, mutual fund distribution, and mutual fund investment services; brokerage, distribution, and investment services for a mutual fund that invests primarily in real estate investment trusts; retirement plan consulting services; investment services for retirement and pension plans, namely, investment consultation and investment management; investment and asset management and investment consultation services for institutional investors and individuals; investment services for variable insurance products and variable annuities, namely, investment management services provided to financial intermediaries; providing investment tracking, investment analysis, and investment management; acting as an investment manager for trusts consisting of investment gifts to another person; sales support services for financial advisors and subadvisory services, namely, providing investment management services to financial advisors; providing quotes for stocks, options, securities, investments, and mutual funds via a global communication network; investment account information services, namely, providing brokerage account and investment account information by telephone, by mail, by electronic means, and via a global communication network; providing news and information to individual and institutional

4

> investors about investing, investments, financial strategies and planning, asset management, educational savings, retirement planning, and tax issues by electronic means and via a global communication network; providing news and information about stocks, options, securities, investments, and mutual funds by electronic means and via a global communication network;
> Class 41: Educational services, namely, providing seminars to individual and institutional investors about investing, investments, financial strategies and planning, asset management, educational savings, retirement planning, and tax issues;
> Class 42: Investment decision-making tools and calculators, namely, providing temporary use of on-line non-downloadable computer software for investment and financial analysis via a global communication network; providing temporary use of on-line non-downloadable interactive computer software that allows users to buy, sell, exchange, and manage investments via a global communication network

(See Exhibit 1). As with Reg. No. 2,084,652, Reg. No. 2,323,585 has become incontestable under the Trademark Act, and thus serves as conclusive evidence of Plaintiff's exclusive right to use the mark in connection with the services as identified in the registration. Plaintiff's registrations are collectively referred to herein as the "'AMERICAN CENTURY' Marks."

11.     Plaintiff, through its predecessor-in-interest and affiliated companies (hereinafter collectively referred to as simply "American Century"), has extensively advertised and promoted various financial services under the "AMERICAN CENTURY" Marks. American Century advertises and promotes its services under the "AMERICAN CENTURY" Marks through a variety of media, including a website at www.americancentury.com, national print advertising campaigns, television and radio commercials, booklets, direct mailings and e-mailings, and flyers. In fact, from 2002 to 2004 alone, American Century spent in excess of 53 million dollars marketing and promoting services offered under the "AMERICAN CENTURY" Marks within the United States. American Century has had an average of $80 billion in assets under management over the past three years.

12.     As part of its efforts to advertise and promote the "AMERICAN CENTURY" mark, for the past seven years American Century has sponsored the annual "American Century Championship," one of the most prestigious and richest celebrity tournaments in golf. Regular

5

celebrity players include NBA's Michael Jordan and Charles Barkley, NFL's John Elway, Joe Theisman and Marshal Faulk, tennis stars Ivan Lendl and Pete Sampras, and NHL's Pierre Larouche, Mario Lemieux and Jeremy Roenick. The tournament features a purse worth $500,000 and can be seen on cable and national broadcast television. Typically, approximately 26,000 people attend the three-day event, and 1.5 million people watch it on television.

13.  The American Century Companies Foundation is a legal entity that provides funding to not-for-profit agencies for operating expenses, capital campaigns and special projects in the cities where American Century operates. Last year, more than 170 different nonprofit organizations received funding through this foundation in amounts totaling in excess of $1.7 million. The American Century Companies Foundation is an example of American Century's efforts to support the communities in which American Century operates, and serves to heighten the recognition of the "AMERICAN CENTURY" name among the public.

14.  As a result of American Century's substantial advertising and promotion of its services under the "AMERICAN CENTURY" Marks, as well as its dedication to excellence and its financial investment in the "AMERICAN CENTURY" Marks, the marks are favorably recognized and relied upon by the consuming public and relevant trade as indicating high quality services originating exclusively from American Century. American Century has acquired extremely valuable goodwill and widespread recognition associated with these marks throughout the country among both consumers and the financial services industry. Needless to say, the "AMERICAN CENTURY" Marks are valuable assets of Plaintiff.

B.  Defendants' Infringing Activities

15.  Subsequent to American Century's advertising, promoting, and providing a wide variety of financial services under the "AMERICAN CENTURY" Marks, ACCC, without any

authorization from American Century, began using "AMERICAN CENTURY CASUALTY COMPANY" as a mark in commerce for non-standard automobile insurance products. ACCC claims to have begun commercial use in or around August 2000. Non-standard automobile insurance is minimum limits automobile liability insurance, which is directed to people who generally are unable to obtain insurance through standard automobile insurance carriers.

16. ACCS claims to have begun using "AMERICAN CENTURY CLAIMS SERVICE, INC." as a mark in commerce for the administration, handling, and settlement of insurance claims on or about March 2000. ACCS incorporated as a Texas corporation on March 19, 2001.

17. On May 12, 2003, ACCC filed application Serial No. 78/248,310 for a logo mark incorporating "AMERICAN CENTURY CASUALTY COMPANY" and covering "insurance underwriting and insurance claims processing services in the field of non-standard auto insurance." In its application, ACCC claimed to have begun using the mark covered by Serial No. 78/248,310 at least as early as March 27, 2000. Plaintiff, through its predecessor-in-interest, submitted an opposition to this application on August 26, 2004.

18. On May 12, 2003, ACCC also filed application Serial No. 78/248,398 for a logo mark incorporating "AMERICAN CENTURY CLAIMS SERVICE, INC." and covering "insurance claims administration in the field of non-standard auto insurance." In its application, ACCC claimed to have begun using the mark covered by Serial No. 78/248,398 at least as early as April 20, 2000. Plaintiff, through its predecessor-in-interest, submitted an opposition to this application on May 3, 2004.

19. On information and belief, at the time ACCC and ACCS selected their respective "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks, at least one of their principals knew of American Century, and thus had

information suggesting the marks may not have been legally available. Despite this knowledge, the Defendants did not conduct any sort of trademark clearance searches or otherwise seek legal advice to ensure their marks did not infringe on the trademark rights of others.

20. On information and belief, Defendants target their insurance services toward independent insurance agents. On information and belief, such agents in turn advertise, promote, and target the insurance services under the Defendants' marks containing "AMERICAN CENTURY" to people in need of non-standard automobile insurance services.

21. Plaintiff's customers include individual investors who are also consumers of automobile insurance. Plaintiff has customers in Texas and in the other states where ACCC and ACCS do business, namely, Louisiana, Georgia, Mississippi, and Alabama. Therefore, the parties' respective customers are or are likely to be overlapping.

22. In general, insurance services are closely related to the wide variety of financial and investment services offered by American Century. Today, there are many companies that offer a whole host of different types of financial and insurance services under the same marks. For example, well-known companies such as American International Group, Inc., State Farm, and Prudential Financial, Inc. offer a variety of both insurance and financial services all under the same mark, as shown in Exhibit 2. Consequently, consumers and members of the financial services industry are likely to believe that companies offering insurance services and investment services under the same or confusingly similar marks are affiliated or connected with each other, or are part of a larger company that offers both types of services.

23. Because of the related nature of insurance and financial services, Plaintiff's customers and others who are familiar with Plaintiff and its use of the "AMERICAN CENTURY" Marks are likely to be confused upon encountering Defendants and their marks containing

"AMERICAN CENTURY" for insurance services. For example, a customer of Plaintiff's could shop for non-standard automobile insurance and mistakenly believe Defendants are sponsored by or affiliated with Plaintiff, when in fact they are not. As another example, should one of American Century's customers be involved in a car accident with one of Defendants' customers, American Century's customer would likely mistakenly believe that Plaintiff and Defendants are somehow affiliated with each other.

24. In fact, Defendants' unauthorized use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks in connection with their insurance services has already caused actual confusion and mistake within the meaning of 15 U.S.C. §1114. For example, on multiple occasions, American Century has received telephone calls from people trying to contact the American Century Casualty Company. The calls occurred so frequently in one area of the country, that American Century's employee answering the telephone kept Defendants' telephone number on hand to redirect confused callers.

25. Defendants' continued unauthorized use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks in connection with their insurance services will inevitably cause further confusion, mistake, and deception of consumers and members of the trade. People are likely to mistakenly believe that the services offered by Defendants are in some way originating from, sponsored by, endorsed by, connected to, or affiliated with Plaintiff when in fact they are not, causing a likelihood of confusion within the meaning of 15 U.S.C. §1114.

26. ACCC and ACCS have been aware of Plaintiff's objection to the use of "AMERICAN CENTURY" in Defendants' marks for insurance services since at least as early as May 5, 2004.

27.     Despite the fact that Defendants have been informed of Plaintiff's incontestable rights and Plaintiff's objections to Defendants' marks, and that actual confusion has occurred, Defendants have not ceased their advertising, promotion, or providing of insurance services under the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks.  In fact, Defendants have informed Plaintiff that they intend to expand their use of marks incorporating "AMERICAN CENTURY" for insurance services.  More specifically, Defendants have expressed their intent to begin offering their services this year in new geographic areas, such as Arkansas, Oklahoma, New Mexico, and Arizona, and their intent to begin use of the marks on the Internet.  Such expanded use of marks incorporating "AMERICAN CENTURY" by Defendants would increase the likelihood of confusion, because Plaintiff conducts business in and has customers in these four states where Defendants intend to expand, and Plaintiff has a presence on the Internet at www.americancentury.com.

28.     Defendants' unauthorized and willful advertising, promotion, and providing of their services under the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks violates Plaintiff's exclusive rights in its "AMERICAN CENTURY" Marks.

29.     Defendants' continued unauthorized use and threatened or actual expanded use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks jeopardizes the entire goodwill symbolized by Plaintiff's registered marks, causing immediate, serious, and irreparable injury to Plaintiff, for which Plaintiff does not have an adequate remedy at law.

30. Because Plaintiff has no control over the nature, quality, or integrity of Defendants' services, Plaintiff will be damaged if those services are of a quality that is inferior to American Century's high-quality services offered under the "AMERICAN CENTURY" Marks.

31. Defendants' continued unauthorized use and threatened or actual expanded use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks, after notification of Plaintiff's rights and that actual confusion has occurred, constitutes willful infringement.

## SECOND CLAIM FOR RELIEF
## False Designation of Origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)

32. Plaintiff repeats and realleges as if fully set forth herein the allegations of paragraphs 1 through 31 inclusive.

33. Defendants' use in commerce of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks in connection with the advertising, promotion, and providing of non-standard automobile insurance services is a false designation of origin. Such use has caused actual confusion and is likely to cause additional instances of confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with American Century, and as to the origin, sponsorship or approval by Plaintiff of the services provided by Defendants and their other commercial activity, within the meaning of 15 U.S.C. § 1125(a).

34. Defendants' unauthorized use and threatened or actual expanded use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks in connection with their advertising, promotion, and providing of insurance services jeopardizes the entire goodwill built up by Plaintiff in its "AMERICAN

CENTURY" Marks, causing serious irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law.

35. Defendants' continued unauthorized use and threatened or actual expanded use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks, after notification of Plaintiff's rights and that actual confusion has occurred, constitutes willful violation of 15 U.S.C. §1125(a).

### THIRD CLAIM FOR RELIEF
### Trademark Dilution in Violation of the Lanham Act, 15 U.S.C. § 1125(c)

36. Plaintiff repeats and realleges as if fully set forth herein the allegations of paragraphs 1 through 35 inclusive.

37. The "AMERICAN CENTURY" Marks, due to extensive advertising, promotion and widespread acceptance by the trade and public, have become famous within the meaning of the Lanham Act, 15 U.S.C. § 1125(c).

38. Defendants' unauthorized use of the confusingly similar "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks began after the "AMERICAN CENTURY" Marks became famous.

39. Defendants' unauthorized use and threatened or actual expanded use of the confusingly similar "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks in commerce in connection with insurance services has already diluted and, if repeated in the future, will continue to dilute the distinctive quality of the famous "AMERICAN CENTURY" Marks in violation of 15 U.S.C. § 1125(c).

40. Defendants' violation of the federal Anti-Dilution law has caused and will cause irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law.

41. Defendants' continued unauthorized use and threatened or actual expanded use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks, after notification of Plaintiff's rights, constitutes willful violation of 15 U.S.C. §1125(c).

### FOURTH CLAIM FOR RELIEF
#### Trademark Dilution in violation of the Texas Anti-Dilution Act, Tex. Bus. & Com. Code §16.29

42. Plaintiff repeats and realleges as if fully set forth herein the allegations of paragraphs 1 through 41 inclusive.

43. The "AMERICAN CENTURY" Marks are valid and protectible as inherently distinctive marks, and are well known and distinctive.

44. Defendants' acts herein pleaded have caused and are likely to cause dilution of the inherently distinctive quality of the "AMERICAN CENTURY" Marks in violation of Tex. Bus. & Com. Code §16.29, for which Plaintiff has no adequate remedy at law.

45. Defendants' acts herein pleaded have caused and are likely to cause injury to the business reputation of American Century and Plaintiff's inherently distinctive "AMERICAN CENTURY" Marks in violation of Tex. Bus. & Com. Code §16.29, for which Plaintiff has no adequate remedy at law.

46. Defendants' continued unauthorized use and threatened or actual expanded use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks, after notification of Plaintiff's rights, constitutes willful violation of Tex. Bus. & Com. Code §16.29.

## FIFTH CLAIM FOR RELIEF
### Unfair Competition in violation of the Common Law of Texas

47.     Plaintiff repeats and realleges as if fully set forth herein the allegations of paragraphs 1 through 46 inclusive.

48.     The "AMERICAN CENTURY" Marks are inherently distinctive and/or have acquired secondary meaning because the marks identify American Century as the source of American Century's services within the mind of the public.

49.     Defendants' advertising, promotion, and providing of insurance services under the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with American Century, and as to the origin, sponsorship or approval by Plaintiff of Defendants' non-standard automobile insurance services, insurance processing services, and their other commercial activity.

50.     Actual confusion has already occurred and is likely to continue if Defendants' advertising, promotion, and providing of their services under the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks does not stop.

51.     Defendants' unauthorized use and threatened or actual expanded use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks in connection with their insurance services jeopardizes the entire goodwill built up by Plaintiff in its "AMERICAN CENTURY" Marks, causing serious irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law.

52.     Defendants, through their use of the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks after

notification of Plaintiff's rights and that actual confusion has occurred, are intentionally attempting to trade off the goodwill long associated with Plaintiff and its "AMERICAN CENTURY" Marks.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff American Century Proprietary Holdings, Inc. prays for a judgment against Defendant American Century Casualty Company and Defendant American Century Claims Service, Inc. as follows:

A. For an injunction immediately restraining Defendants, their officers, directors, agents, servants, employees, licensees, attorneys and all other persons in active concert or participation with them from:

(1) providing any type of insurance services under a mark or trade name consisting of or containing "AMERICAN CENTURY" or anything confusingly similar thereto, including but not limited to the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks;

(2) advertising or promoting insurance services or other financial services under a mark or trade name consisting of or containing "AMERICAN CENTURY" or anything confusingly similar thereto, including but not limited to the "AMERICAN CENTURY CASUALTY COMPANY" and "AMERICAN CENTURY CLAIMS SERVICE, INC." marks; and

(3) holding out in any manner whatsoever that Defendants or Defendants' non-standard automobile insurance services or insurance processing

        services are in any way sponsored by, connected to, associated with, endorsed by, or affiliated with Plaintiff or any of its affiliates.

B. That Defendants be directed to deliver up for destruction all materials of any nature whatsoever bearing the infringing marks containing "AMERICAN CENTURY" or anything confusingly similar thereto, including but not limited to advertising materials, promotional materials, signage, brochures, pamphlets, flyers, direct mail pieces, business stationery, business cards, business forms, and/or any documents, things, or other materials bearing or containing "AMERICAN CENTURY" or anything confusingly similar thereto, pursuant to 15 U.S.C. §1118.

C. That Defendants be directed to immediately file the necessary paperwork to change their corporate names with the State of Texas to names that do not include "AMERICAN CENTURY" or anything confusingly similar thereto, and that Defendants take all steps necessary to inform the insurance regulators of the State of Texas and any other states where Defendants are or may be conducting business of the name change and ask that their records be updated accordingly;

D. That Defendants be required to notify their existing insurance agent customers of their name change in writing, and that Defendants be required to (a) instruct their insurance agent customers that marks and logos containing "AMERICAN CENTURY" are no longer to be used by the agents in connection with Defendants' services in any manner; and (b) seek a recall from the agents of all business forms, brochures, and other materials that the agents received from Defendants and that may still be in the agents' possession, which contain

"AMERICAN CENTURY" in connection with Defendants and/or Defendants' insurance services.

E. That Defendants be required to make an accounting to Plaintiff and be directed to pay over to Plaintiff all gains, profits and advantages realized by Defendants from the sale of insurance services offered under marks consisting of or containing "AMERICAN CENTURY" pursuant to 15 U.S.C. §1117.

F. That Defendants be directed to pay to Plaintiff all damages suffered by American Century, and that such damages be trebled in accordance with the law pursuant to 15 U.S.C. §1117.

G. That Defendants be directed to pay to Plaintiff reasonable attorney's fees and all costs connected with this action pursuant to 15 U.S.C. §1117.

H. That Plaintiff has such other and further relief that the Court may deem just and proper.

Dated: June 24, 2005                        GIBBS & BRUNS, L.L.P.

                                     By:    /s/    Michael K. Oldham
                                            Michael K. Oldham
                                            1100 Louisiana, Suite 5300
                                            Houston, Texas 77002
                                            Telephone: (713) 650-8805 [main switchboard]
                                            Telephone: (713) 751-5268 [direct line]
                                            Facsimile:  (713) 750-0903

                      LEYDIG, VOIT & MAYER, LTD.

By:   /s/    Mark J. Liss
       Mark J. Liss (Ill. Bar No. 6181002)
       Tamara A. Miller (Ill. Bar No. 6237169P)
       Caroline L. Stevens (Ill. Bar No. 6274252)
       Two Prudential Plaza, Suite 4900
       Chicago, Illinois 60601
       Telephone : (312) 616-5600
       Facsimile : (312) 616-5700

Attorneys for Plaintiff
American Century Proprietary Holdings, Inc.